Steven Bradley JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–93–01013–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

May 25, 1995.

Brian W. Wice, John E. Ackerman, Houston, for appellant.

J. Harvey Hudson, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

## MAJORITY OPINION

AMIDEI, Justice.

A jury convicted appellant of murder and assessed punishment at twenty years confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant appeals from the judgment in two points of error, asserting that the trial court erred in denying jury instructions on the lesser included offenses of involuntary manslaughter and criminally negligent homicide. We reverse and remand.

On or about November 24, 1991, appellant shot and killed Robert Thomas. At that time, Thomas' uncle, Charles Lambert, was homeless. Lambert was living at a "campsite" in the woods off of Highway 6 with Betty Brogdon and David Whittingstrom. Once or twice a week, Robert Thomas visited his uncle at the campsite.

On November 24, 1991, Thomas and Lambert attended an early Thanksgiving dinner. Around 2:00 pm some friends showed up. Thomas, Lambert, and two friends left for the "treehouse" in another campsite to drink a 12–pack of beer. Around 4:30 pm, one of Thomas' friends left and another one arrived with another 12–pack of beer. Eventually, Thomas' friends left with the remaining beer. Thomas went to a nearby convenience store to purchase more beer. While there, Thomas ran into some friends. His friends, Brogdon, Whittingstrom, and appellant, had been drinking. Thomas invited them to drink beer around a bonfire at the campsite.

When they arrived at the treehouse, Lambert and Bobby Slusher were gathering wood for a bonfire. Appellant brought a .25 caliber automatic pistol to the beer bust. He fired the gun several times in the woods. Other members of the group tried shooting appellant's gun. When he pulled out the gun at the bonfire to show it off, several members of the group told him to put it away. Appellant put the gun back in his trousers, and the group resumed drinking.

Later that evening, a shot was fired from the woods. The bullet passed above the groups' heads. Lambert started toward appellant to tell him to put the gun away. Thomas intervened and told his uncle to let him speak to appellant since he went to school with appellant and knew him. Thomas disappeared down the trail. Brogdon overheard appellant and Thomas arguing. There was another gunshot, and Brogdon yelled, "He shot him." Lambert ran to Thomas and found him lying on the ground. Thomas said, "The son-of-a-bitch shot me." Lambert raised Thomas' T-shirt and saw a bullet wound in his abdomen. Several members of the group transported Thomas to the hospital. He died there.

■ At the close of the evidence, appellant requested jury instructions on the lesser included offenses of involuntary manslaughter and criminally negligent homicide. The trial court denied the request and charged the jury only on the offense of murder. This appeal followed. In reviewing an alleged error in the jury charge, we must determine whether the charge was erroneous, and if so, whether the error was harmful to the defendant. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984).

■ A charge on a lesser included offense is required if the two-prong test in *Rousseau v. State*, 855 S.W.2d 666 (Tex. Crim.App.1993), is met.[1] This test states: (1) the lesser included offense must be in-

---

1. The Rousseau Court rejected the federal standard but borrowed from it. The federal standard provides that a lesser included offense instruction should be given if the evidence would permit a jury to rationally find a defendant guilty of the lesser offense and acquit him of the greater. *Cordova v. Lynaugh*, 838 F.2d 764 (5th Cir.), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 932 (1988).

cluded within the proof necessary to establish the offense charged; and (2) some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Id.* at 673.[2] In making this assessment, we are cognizant that if evidence from any source raises the issue of a lesser included offense, a charge on that offense must be included in the court's charge. *Saunders v. State,* 840 S.W.2d 390, 391 (Tex. Crim.App.1992). Both involuntary manslaughter and criminally negligent homicide are lesser included offenses of murder. *Navarro v. State,* 863 S.W.2d 191, 203 (Tex. App.—Austin 1993, pet. ref'd). Thus, the first prong of the *Rousseau* test is met.

We must now determine if the second prong of the *Rousseau* test has been met. A person commits involuntary manslaughter when he recklessly causes the death of another. TEX.PENAL CODE ANN. § 19.04(a) (Vernon 1989).[3] A person acts recklessly when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. TEX.PENAL CODE ANN. § 6.03(c) (Vernon 1974). Thus, involuntary manslaughter occurs when the actor consciously disregards a risk created by his conduct.

■■■ A person commits the offense of criminally negligent homicide if he causes the death of an individual by criminal negligence. TEX.PENAL CODE ANN. § 19.07(a) (Vernon 1989). Criminal negligence occurs when a person ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. TEX.PENAL CODE ANN. § 6.03(d) (Vernon 1974). In summary, criminal negligence means the actor should have been aware of the risk surrounding his conduct, but failed to perceive it. *Dowden v. State,* 758 S.W.2d 264, 270 (Tex.Crim.App. 1988).

■■■ Implicit in the definitions of these two offenses is the concept that the actor must not have acted intentionally or knowingly; he must not have intended the resulting death or been aware that a death was reasonably certain to occur. See TEX.PENAL CODE ANN. § 6.03(a) & (b) (Vernon 1974). Therefore, in order for appellant to be charged on involuntary manslaughter or criminally negligent homicide, the record must contain some evidence that would permit a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser offense. This is so regardless of whether the evidence is weak, impeached or contradicted. *Evans v. State,* 781 S.W.2d 376, 378 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd).

■■■ In determining whether the trial court erred in failing to give a charge on the lesser included offense, all of the evidence presented by the State and the defendant must be considered. *Havard v. State,* 800 S.W.2d 195, 216 (Tex.Crim.App.1989) (op. on reh'g). Entitlement to a jury charge on a lesser included offense must be made on a case-by-case basis according to the particular facts. *Livingston v. State,* 739 S.W.2d 311, 336 (Tex.Crim.App.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). In the case before us, appellant relies on two evidentiary sources. The first is a written statement to the police, admitted into evidence by the State. Appellant's written statement provides in pertinent part as follows:

> On Sunday night I was with some more people at a camp located off of Queenston along a bayou. People go there from time to time and drink. On Sunday night I went there with Bob, Dave, Betty, Charles and Robert. I don't know their last names. We had all been drinking and I think we were all drunk. Robert and I got into an argument about something, but I don't remember what we were arguing about. I recall Robert coming at me and I had a pistol in my pocket and I pulled it out and shot at him one time. He then

---

**2.** *Rousseau* interpreted and clarified the second prong of the two-prong test which was initially set out in *Royster v. State,* 622 S.W.2d 442, 447 (Tex.Crim.App.1981) and *Aguilar v. State,* 682 S.W.2d 556, 558 (Tex.Crim.App.1985).

**3.** The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised penal code. See acts 1993, 73rd Leg., ch. 900, § 1.18(b). Therefore, all references to the penal code are to the code as in effect at the time the crime was committed.

jumped me and struck me in the nose. I think I shot one more time, but I don't recall if I hit him or not. We went down and everyone came around. I don't recall what happened to the gun. The gun was a .25 caliber semi-automatic chrome pistol. I bought the pistol from a pawn shop. The people there put Robert in the car and took him to the hospital.

I want to say that I did not mean to shoot Robert.

Here, appellant indicates he did not intentionally shoot Robert. This constitutes some evidence that appellant did not act intentionally or knowingly when he shot his friend.

■■■ The second source appellant relies on for evidence of a lesser included offense is appellant's own testimony at the trial. Appellant testified on direct examination as follows:

Q. Steven, when you were up at the levee, did someone hit you?

A. Yes.

Q. And who was that?

A. It was Robert [the deceased].

Q. And where did he hit you?

A. In the nose.

Q. And did y'all start fighting then?

A. It wasn't really a fight, it was more grabbing each other.

\* \* \* \* \* \*

Q. After he punched you what happened?

A. We just—I guess it was like wrestling, but we were standing.

Q. Did Robert Thomas do anything after you started fighting?

A. He tried to take the gun.

Q. And when he tried to grab the gun, what happened?

A. That's when it went off.

Q. And he did grab the gun, didn't he?

A. To my best recollection, yes.

The State argues that this testimony conflicts with appellant's statement, thus, no jury could have rationally found appellant guilty of a lesser included offense based upon this evidence. We disagree. A defendant's own testimony, though contradicted, is sufficient to require an instruction on a lesser included offense. *Hunter v. State*, 647 S.W.2d 657 (Tex.Crim.App.1983). A jury can selectively believe all or part of the evidence admitted at trial. A jury has the exclusive right to determine appellant's intent at the time of the offense. *Evans v. State*, 781 S.W.2d 376, 379 (Tex.App.—Houston [14th Dist.] 1989, pet ref'd).

■■■ Some evidence is directly germane to both lesser included offenses. Thus, instructions on the lesser included offenses are warranted. Some evidence exists in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense of involuntary manslaughter or criminally negligent homicide. The evidence that (1) the entire group had been drinking heavily, (2) members of the group practiced shooting the gun, (3) appellant and the deceased engaged in an argument and subsequent fight, and (4) the gun discharged when the deceased grabbed it during the fight, raises the issues of whether appellant consciously disregarded a risk created by his conduct, and whether appellant should have been aware of the risk surrounding his conduct, but failed to perceive it.[4] The jury could have found that appellant was reckless or criminally negligent, and thus committed involuntary manslaughter or criminally negligent homicide rather than murder.

We hold that it was error for the trial court to refuse appellant's requested charges on involuntary manslaughter and criminally negligent homicide. The error was harmful. The jury was left only with a choice to convict of murder or acquit. The jury was not

---

**4.** The State relies on two cases, both of which are distinguishable. *Navarro v. State*, 863 S.W.2d 191 (Tex.App.—Austin 1993, pet. ref'd) (finding testimony of a witness that it was her own sense and opinion that the defendant did not mean to kill the victim, did not require the inclusion of lesser included offenses of involuntary manslaughter and criminally negligent homicide); *Burnett v. State*, 865 S.W.2d 223 (Tex.App.—San Antonio 1993, pet. ref'd) (finding testimony that the defendant intentionally shot the deceased, but only intended to wound him, did not require the inclusion of the lesser included offenses of involuntary manslaughter and criminally negligent homicide).

presented with the full range of offenses raised by the evidence at trial.

We reverse and remand the judgment of the trial court.

EDELMAN, Justice, dissenting.

I respectfully dissent from the opinion of the majority that the trial court erred in refusing to submit jury questions on the lesser included offenses of involuntary manslaughter and criminally negligent homicide. More specifically, I disagree that evidence existed in the record concerning the mental state of appellant that would permit a jury to rationally find that if he was guilty, he was guilty of only those lesser offenses. *Rousseau,* 855 S.W.2d at 673.[1]

To commit murder under Sections 19.02(a)(1) and 6.03(b) of the Penal Code, a defendant must at least know that his conduct is reasonably certain to cause death. To commit involuntary manslaughter under Sections 19.05(a) and 6.03(c) of the Penal Code, a defendant must know that his conduct poses a substantial risk of causing death. To commit criminally negligent homicide under Sections 19.07(a) and 6.03(d) of the Penal Code, a defendant must fail to perceive the risk created by his conduct. *Dowden,* 758 S.W.2d at 270.

Implicit in the definitions of involuntary manslaughter and criminally negligent homicide is that the defendant not know that death was reasonably certain to result from his conduct; otherwise he would be guilty of murder. *See Burnett v. State,* 865 S.W.2d 223, 228–229 (Tex.App.—San Antonio 1993, pet. ref'd). Therefore, in order for a defendant to be entitled to a jury charge on the lesser offenses, the record must contain some evidence that the defendant did not know that death was reasonably certain to result from his conduct. *Id.*

In this case, the record reflects that appellant brought a loaded gun to the gathering, and was firing it before the altercation with

Thomas. There was no evidence that appellant was unaware that the gun was loaded or of it's potential for deadly injury. Thus, there was no evidence that he failed to perceive the risk created by shooting the gun, as necessary to support a jury question on criminally negligent homicide. *See, e.g., Thomas v. State,* 699 S.W.2d 845, 850–51 (Tex.Crim. App.1985) (and cases cited therein).

Moreover, appellant admitted in his written statement that he deliberately shot *at* Thomas immediately before the scuffle in which Thomas was fatally wounded. There is no indication that this was a warning shot or otherwise intended not to hit Thomas.

The only inference which can reasonably be drawn from these facts is that appellant knew that death was reasonably certain to result from his shooting at Thomas. Moreover, there is no basis to conclude that, once the struggle for the gun then began, appellant became less aware of this fact.

Appellant's statements were to the effect that the gun went off unintentionally during his struggle with Thomas, and that he did not mean to shoot Thomas. However, these statements cannot be plucked from the record and examined in a vacuum, but must be viewed in the context of the remaining facts. *See Godsey v. State,* 719 S.W.2d 578, 584 (Tex.Crim.App.1986). In that appellant admitted that he had just *tried* to shoot Thomas immediately before the struggle began, these statements do not permit a jury to *rationally* find that appellant did not know that Thomas' death was reasonably certain to result from his conduct.[2] Accordingly, I would affirm the judgment of the trial court.

---

1. Importantly, the *Rousseau* test does not merely require *some* evidence, but some evidence that would permit a jury to *rationally find* the defendant guilty of only the lesser offense (and not the higher offense). 855 S.W.2d at 673. It was specifically with respect to this distinction that *Rousseau* modified the second prong of the test

previously set forth in *Royster v. State,* 622 S.W.2d 442 (Tex.Crim.App.1981).

2. Moreover, in order to find harm from failing to include a charge on the lesser offenses, it must be assumed that the jury might have convicted

on a lesser offense if so charged. However, that assumption could only be true to the extent that the jury disregarded the court's instruction to acquit appellant unless they found him guilty of murder beyond a reasonable doubt. I do not believe a finding of harm can validly be based on an unsupported assumption that the jury disobeyed the court's instructions.