COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





MELVIN BROWN,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§
 
§
 
§
 
§
 
§
 
 § 


No. 08-03-00058-CR

Appeal from the

409th District Court
of El Paso County, Texas 

(TC# 20020D01745)





MEMORANDUM OPINION

           Melvin Brown appeals his conviction for assault of a public servant. Appellant was
found guilty by a jury and sentenced to twenty-five years in the Texas Department of
Criminal Justice enhanced with two prior felonies. We affirm the judgment of the trial court.
I. SUMMARY OF THE EVIDENCE
           On March 31, 2002, Officer Gerardo Martinez was working at the El Paso County Jail
Annex in Pod 500. Martinez was working the cell block floors and made visual checks of
the inmates every hour. During one of his visual checks, he saw Appellant across the yellow
line in the day room around the door where inmates were not allowed. Appellant was
stooped over looking through the key hole communicating with an inmate on the other side
of the wall. Further, it looked like Appellant was pushing something through the door. 
Martinez looked on the other side of the wall and saw the other inmate with contraband in
his hand. The contraband turned out to be envelopes with stamps on them containing a piece
of paper in code. Martinez first secured the inmate on the other side and retrieved the
contraband and then entered the area where Appellant was located. Appellant was moving
away from the yellow line, and Martinez told Appellant to go to his cell. Appellant refused
and instead sat down at a table. Martinez told Appellant several times to go to his cell, and
Appellant became agitated and was cursing and yelling. Martinez then signaled the guard
station officer to get assistance. Officer Steve Porras then arrived from neighboring Pod 600. 
At this time, Appellant continued to refuse to go to his cell. Porras told Appellant to make
it easy on himself by going to his cell. After several minutes, Appellant decided to walk to
his cell. During his walk, Appellant was making sudden movements, acting violent, and his
hand gestures were not normal. Appellant was sticking his chest down, cocking his arms
back as if he was going to assault the officers, and cursing. Porras also characterized
Appellant’s demeanor as angry, upset, and aggressive. Appellant would stop, turn around,
and call the officers names. Martinez believed that Appellant wanted to assault him. 
Martinez thus felt that he needed to take control of the situation and walked behind Appellant
in an escort position with his hand out. Porras also took a protective stance since Appellant
seemed like he was going to become aggressive. Porras testified that Martinez placed his
hand on the small of Appellant’s back to direct Appellant to his cell and that Appellant
turned around and smacked Martinez’s arm and said not to touch him.
           When Appellant reached his cell, he turned around and grabbed Martinez’s shirt with
both hands. Martinez then grabbed Appellant by his uniform in the chest area and pushed
him back to the bunk. Appellant was punching with both hands in closed fists and kicking. 
Appellant struck Martinez in the neck, midsection, and left shin. Porras saw Appellant strike
Martinez in the ear area, the shoulder, and the side of head. Corporal Robert Flynn, who
arrived during the struggle, did not see Appellant strike Martinez. Pictures of Martinez’s
injuries were admitted at trial. Martinez’s injuries to his shin were characterized as
abrasions, and Martinez admitted that it was possible that he could have scraped his leg on
the concrete bunk. Further, Martinez’s uniform was torn. Flynn noticed a red mark on
Martinez’s neck.
           After Appellant started punching and kicking, Porras came in behind Martinez and 
Martinez pushed Appellant to the bunk. While Martinez and Porras were trying to get
Appellant to stop resisting, Appellant continued to kick, punch, and curse. Porras jumped
over Martinez and grabbed Appellant’s forearms. Martinez then felt it was necessary to
strike Appellant, which he did twice in Appellant’s midsection. Martinez testified that
officers were allowed to strike inmates in self-defense. However, Porras did not see
Martinez strike Appellant. Appellant then got one of his arms loose and struck Martinez
again, so Porras put all his weight on Appellant and waited for backup. Porras then heard
Corporal Flynn in the background yelling for Appellant to cool it. Flynn placed his hand on
Appellant’s stomach and told Appellant to relax and not to move.
           When backup arrived, Appellant froze. Then, Martinez and Porras picked Appellant
up and placed him on the floor and handcuffed him. At this time, Corporal Carlos Gutierrez,
who was acting sergeant, arrived on the scene. Appellant was laughing hysterically and loud. 
Appellant said, “I know I was wrong for passing stuff, but he didn’t have to touch me. If
he’s going to press charges, I want to press charges, also.” Appellant stated that if Martinez
was going to write a report it was going to be a good one. Appellant did not appear to be
injured and was not complaining of any injuries. The other inmates in their cells began
yelling and banging on the doors. Appellant was taken to a holdover cell.
           Officer Martinez made three statements: (1) a facility incident report made by
Martinez, (2) a complaint report made by Martinez, and (3) a multipurpose report made by
Detective Montoya. Martinez’s statements provided that Appellant was walking toward his
cell, and Martinez put his hand on Appellant, who said don’t touch me. Martinez admitted
that his statements did not provide that he struck Appellant; however, Martinez stated that
officers are allowed to strike inmates in self-defense. Officer Porras made two statements:
(1) a statement on the day of the incident to Montoya, and (2) a statement to Detective Jesus
Tarango on June 2002. Porras never stated that Appellant grabbed Martinez in either
statement. Further, in his first statement, Porras did not provide that Appellant struck
Martinez; however, Porras did state that Appellant was swinging and kicking at Martinez. 
Porras did say that Appellant hit Martinez in his second statement.
II. DISCUSSION
           In Issue No. Three, Appellant challenged the legal sufficiency of the evidence to
support his conviction for assault of a public servant. Appellant argued that the element of
causation of bodily injury was lacking since the State failed to prove that Martinez suffered
any bodily injury. Appellant also complained that Martinez did not testify that he suffered
any pain.
A. Legal Sufficiency
           In reviewing the legal sufficiency of the evidence to support a criminal conviction, we
must review all the evidence, both State and defense, in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99
S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex. Crim.
App. 1991), overruled on other grounds, Paulson v. State, 28 S.W.3d 570 (Tex. Crim. App.
2000). This familiar standard gives full play to the responsibility of the trier of fact fairly to
resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences
from basic to ultimate facts. Jackson, 443 U.S. at 319, 99 S.Ct. at 2789. The jury is entitled
to draw reasonable inferences from the evidence. Benavides v. State, 763 S.W.2d 587,
588-89 (Tex. App.--Corpus Christi 1988, pet. ref’d). The jury may use common sense and
apply common knowledge, observation, and experience gained in the ordinary affairs of life
when giving effect to the inferences that may reasonably be drawn from the evidence. 
Griffith v. State, 976 S.W.2d 686, 690 (Tex. App.--Tyler 1997, pet. ref’d). We do not resolve
any conflict of fact or assign credibility to the witnesses, as it was the function of the trier of
fact to do so. See Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson
v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). Instead, our duty is only to determine
if both the explicit and implicit findings of the trier of fact are rational by viewing all of the
evidence admitted at trial in a light most favorable to the verdict. Adelman, 828 S.W.2d at
422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. 
Matson, 819 S.W.2d at 843. Further, the standard of review is the same for both direct and
circumstantial evidence cases. Geesa, 820 S.W.2d at 158.
           A person commits the offense of assault on a public servant if he intentionally,
knowingly, or recklessly causes bodily injury to a person the actor knows is a public servant
while the public servant is lawfully discharging an official duty. Tex. Penal Code Ann. §
22.01(b)(1) (Vernon Supp. 2004-05). The indictment against Appellant charged him with
intentionally, knowingly, and recklessly causing bodily injury to Officer Gerardo Martinez
by (a) striking Martinez in the neck with Appellant’s hand, (b) kicking Martinez’s body with
Appellant’s foot, and (c) kicking Martinez’s leg with Appellant’s foot. The jury charge
instructed the jury that the definition of “bodily injury” was “physical pain, illness, or any
impairment of physical condition.” Tex. Penal Code Ann. § 1.07(a)(8) (Vernon Supp.
2004-05).
           Viewing the evidence in the light most favorable to the verdict, we find that a rational
trier of fact could have found the essential elements of assault on a public servant beyond a
reasonable doubt. See Jackson, 443 U.S. at 318-19, 99 S.Ct. at 2789. First, Officer Martinez
testified that Appellant struck him in the neck, his midsection, and his left shin. Martinez
characterized the injury to his knee as abrasions. Second, Porras stated that he also saw
Appellant strike Martinez in the ear area, his shoulder, and his head. Next, Flynn saw a red
mark on Martinez’s neck. Last, pictures of Martinez’s injuries were admitted at trial.
           While no witness directly testified that Martinez suffered pain as a result of being
struck and kicked by Appellant, the jury was permitted to draw reasonable inferences from
the evidence, including an inference that the victim suffered pain as a result of his injuries. 
Arzaga v. State, 86 S.W.3d 767, 778 (Tex. App.--El Paso 2002, no pet.) (citing Goodin v.
State, 750 S.W.2d 857, 859 (Tex. App.--Corpus Christi 1988, pet. ref’d)). Further, the
existence of a cut, bruise, or scrape on the body is sufficient evidence of physical pain
necessary to establish “bodily injury” within the meaning of the statute. Id. (citing Bolton
v. State, 619 S.W.2d 166, 167 (Tex.Crim.App. 1981) (evidence of cut on arm sufficient to
show bodily injury); Goodin, 750 S.W.2d at 859 (rejecting contention that because victim did
not testify that bruises and strains “hurt” or that he felt pain the State failed to prove “bodily
injury;” holding the existence of bruises and muscle strain sufficient to show bodily injury
because jury could draw inference from these injuries that victim suffered physical pain)). 
Thus, the jury was entitled to infer from the testimony of Officers Martinez and Porras and
Corporal Flynn that Officer Martinez suffered bodily injury. Accordingly, we find the
evidence is legally sufficient to sustain Appellant’s conviction for assault of a public servant,
and Appellant’s Issue No. Three is overruled.
B. Lesser-included Charge of Assault
           In Issue No. One, Appellant challenged the trial court’s denial of his request for a
charge on the lesser-included offense of assault. Appellant argued that there was a scintilla
of evidence that at the time Appellant allegedly struck and kicked Martinez that Martinez
was not in the lawful discharge of his official duties. Appellant seemed to suggest that
Martinez was outside his official duties because he struck Appellant.
           To determine whether Appellant was entitled to a charge on the lesser-included
offense, we apply a traditional two-prong test. See Bignall v. State, 887 S.W.2d 21, 23 (Tex.
Crim. App. 1994); Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App.), cert.
denied, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); Royster v. State, 622 S.W.2d
442, 446 (Tex. Crim. App. 1981); Bartholomew v. State, 882 S.W.2d 53, 54-55 (Tex. App.--Houston [14th Dist.] 1994, pet. ref’d); Ramirez v. State, 976 S.W.2d 219, 226-27 (Tex.
App.--El Paso 1998, pet. ref’d). First, the lesser-included offense must be included within
the proof necessary to establish the offense charged. Bignall, 887 S.W.2d at 23; Ramirez,
976 S.W.2d at 227. Second, some evidence must exist in the record that would permit a jury
rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. 
Ramirez, 976 S.W.2d at 227. The credibility of the evidence and whether it conflicts with
other evidence or is controverted may not be considered in making the determination of
whether the lesser-included offense should be given. See Gadsden v. State, 915 S.W.2d 620,
622 (Tex. App.--El Paso 1996, no pet.); Barrera v. State, 914 S.W.2d 211, 212 (Tex. App.--El Paso 1996, pet. ref’d). Regardless of its strength or weakness, if any evidence raises the
issue that the defendant was guilty only of the lesser offense, then the charge must be given. 
Saunders v. State, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992). An accused is guilty only
of a lesser-included offense if there is evidence that affirmatively rebuts or negates an
element of the greater offense, or if the evidence is subject to different interpretations, one
of which rebuts or negates the crucial element. See Ramirez, 976 S.W.2d at 227. It is not
enough that the jury may disbelieve crucial evidence pertaining to the greater offense. See
Skinner v. State, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997), cert. denied, 523 U.S. 1079,
118 S.Ct. 1526, 140 L.Ed.2d 677 (1998). There must be some evidence directly germane to
the lesser-included offense for the jury to consider before an instruction on the
lesser-included offense is warranted. See Ramirez, 976 S.W.2d at 227.
           Assault is a lesser-included charge of assault of a public servant. Tex. Penal Code
Ann. § 22.01(a). Thus, we must determine whether there is evidence in the record from
which a jury could have rationally acquitted Appellant of the greater offense while convicting
him of the lesser offense. Martinez was employed as a detention officer with the El Paso
Sheriff’s Office. A “public servant” is “a person elected, selected, appointed, employed, or
otherwise designated as . . . an officer, employee, or agent of government.” Tex. Penal
Code Ann. § 1.07(a)(41)(A). Thus, Martinez’s employment qualifies him as a “public
servant.” Martinez’s duties as detention officer at the jail annex were to make visual checks
of the inmates every hour and to enforce facility rules. Inmates in one cell block were not
allowed to communicate with inmates in other cellblocks. Further, inmates were not to cross
the yellow line near the door in the day room. Inmates also were not to assault or disrespect
officers.
           Martinez caught Appellant passing contraband to another inmate in another cell block. 
Then, when Martinez tried to put Appellant in his cell to investigate, Appellant refused and
became violent. Thus, Martinez was exercising his official duties by trying to investigate
violations of facility rules. Further, while Appellant seemed to argue that Martinez was not
discharging his official duties at the time since he struck Appellant, testimony at trial showed
that officers were allowed to strike inmates in self-defense. Appellant was swinging at
Martinez and kicking him; thus, Martinez was justified in using self-defense. Therefore, the
evidence did not show that Martinez was not acting in his official duty, and we find no
evidence which would have allowed the jury to rationally find that if Appellant was guilty,
then he was only guilty of assault. Ramirez, 976 S.W.2d at 227. Accordingly, Appellant was
not warranted an instruction on the lesser-included offense of assault, and Appellant’s Issue
No. One is overruled.
C. Enhanced Punishment Charge
           In Issue No. Two, Appellant challenged the trial court’s submission of an enhanced
punishment charge. First, Appellant argued that he did not receive personal notice of the
enhancement allegation. Second, Appellant asserted that the State could not use his New
Mexico conviction as an enhancement since the conviction included a term of probation, and
under Texas law, a conviction that includes a term of probation is not admissible to enhance
punishment.
1. Enhancement Allegation
           At trial, the State read the enhancement provision against Appellant as follows:
Prior to the commission of the primary offense charged in the
indictment, the Defendant, on the 16th day of April 1997, in the 65th District
Court of El Paso County, Texas in Cause Number 970D00314, was convicted
of a felony, to wit, prohibited substance in a correctional facility and said
conviction became final prior to the commission of the primary offense alleged
in the indictment.
 
Furthermore, that prior to the primary offense charged in the indictment
and the offense in the foregoing paragraph of this notice, the Defendant, on the
12th day of September 1995, in the Third Judicial District Court of Dona Ana
County, New Mexico in Cause Number CR-95-71, was convicted of a felony,
to wit, residential burglary, and said conviction became final prior to the
commission of the primary offense alleged in the indictment and prior to the
offense alleged in the foregoing paragraph of this notice.

2. Notice of Enhancement Allegation
           Here, the indictment did not include an enhancement paragraph. The State instead
filed its notice of enhancement and habitualization on October 11, 2002. The State intended
to use Appellant’s felony conviction on April 16, 1997 for a prohibited substance in a
correctional facility in El Paso County and his felony conviction on September 12, 1995 for
residential burglary in Dona Ana County, New Mexico. The Appellant stipulated that his
attorney received notice of the enhancement allegation on October 11, 2002. However,
Appellant argued that he should have received personal notice.
           Voir dire began on October 18, 2002 with trial starting on Monday, October 21, 2002. 
However, the trial ended in a mistrial since the jury was unable to reach a verdict. Thus, the
voir dire for Appellant’s second trial began on January 10, 2003 with trial starting on
Monday, January 13, 2003.
           A criminal defendant is entitled to notice of prior convictions to be used for
enhancement. Brooks v. State, 957 S.W.2d 30, 33 (Tex. Crim. App. 1997). However,
alleging an enhancement in the indictment is not the only reasonable method of conveying
such notice; it is proper for such a notice of intent to seek enhanced punishment based on a
prior conviction to be filed with the court and served on the defendant prior to trial. See id. 
Notice provided ten days before trial is presumptively reasonable. Chimney v. State, 6
S.W.3d 681, 694 (Tex. App.--Waco 1999, pet. ref’d) (citing Williams v. State, 481 S.W.2d
119 (Tex. Crim. App. 1972)).
           In Lester v. State, No. 2-02-111-CR, 2004 WL 102432, at *1 (Tex. App.--Fort Worth
Jan. 22, 2004, no pet.), the Appellant was charged with indecency with a child. On appeal,
Appellant asserted that the trial court erred by allowing his sentence to be enhanced without
proper pleading or notice. Id., at *3. The indictment did not contain any enhancement
allegations. Id. However, the State filed its notice of intent to use a prior felony conviction
for enhancement purposes on March 21, 2002. Id. The certificate of service indicated that
the document was delivered by fax to Appellant’s counsel the day before. Id. Further,
Appellant’s counsel admitted that his office received the notice on the 20th. Id. The court
found that formal notice was filed in the case and that the notice specifically informed
Appellant of which prior felony conviction the State intended to use to enhance his
punishment. Id. Thus, the court held that the State provided Appellant with proper notice
of the offense it intended to use for enhancement. Id., at *4.
           In Anderson v. State, No. 12-02-00277-CR, 2004 WL 1202982, at *1 (Tex. App.--Tyler June 2, 2004, pet. ref’d), the Appellant was charged with evading arrest while using
a vehicle. On appeal, Appellant argued that the State did not give him sufficient legal notice
that it was going to use his alleged use of a deadly weapon to enhance his punishment. Id.,
at *4. The State had sent notice to Appellant’s attorney on the day before jury selection. Id. 
The court found that the State’s notice was proper. Id.
           Here, Appellant’s counsel admitted that he received notice on October 11, 2002. The
second trial did not begin until January 13, 2003. Thus, Appellant received proper notice
through his attorney of the State’s intent to use two prior felony convictions as enhancement
for his punishment. Lester, 2004 WL 102432, at *3-4; Anderson, 2004 WL 1202982, at *4. 
Thus, the trial court did not err in finding the State properly notified the Appellant.
3. Use of New Mexico Conviction
           In the New Mexico conviction used for enhancement, Appellant pleaded guilty and
was convicted of residential burglary and larceny. On the count of residential burglary,
Appellant was sentenced to three years in the New Mexico Department of Corrections and
two years parole. On the count of larceny, Appellant was sentenced to eighteen months in
the Department of Corrections and one year parole. Appellant was to serve the sentences
consecutively. However, the sentence in the larceny count was suspended. Once released,
Appellant was to be placed on probation for eighteen months to be served concurrently with
his parole.
           Only final convictions can be used for enhancement purposes. Ex Parte Murchison,
560 S.W.2d 654, 656 (Tex. Crim. App. 1978). A conviction is not final for enhancement
purposes where the imposition of sentence has been suspended and probation granted, unless
the State alleges and proves that the probation has been revoked. Id. When a defendant
receives regular probation pursuant to Code of Criminal Procedure article 42.12, § 3 (now
article 42.12, § 6), he is convicted and punishment is assessed. Langley, 833 S.W.2d at 142. 
However, the imposition of that sentence is suspended, and the conviction does not become
final for purposes of enhancement unless the probation is revoked. Id. at 143. A
successfully served probation is not available for enhancement purposes. Id.
           Here, the State was using Appellant’s conviction for residential burglary, not larceny. 
Appellant’s conviction for residential burglary was final since Appellant received a sentence
of three years in the New Mexico Department of Corrections. Appellant received parole after
completion of his sentence. Thus, Appellant’s sentence for residential burglary did not
include probation and was a final conviction for purposes of enhancement. See Langley, 833
S.W.2d at 142-43. Therefore, the court did not err in admitting Appellant’s New Mexico
conviction for enhancement. Accordingly, Appellant’s Issue No. Two is overruled in its
entirety.
           Having overruled each of Appellant’s issues on review, we affirm the judgment of the
trial court.
                                                                  RICHARD BARAJAS, Chief Justice
February 17, 2005

Before Panel No. 4
Barajas, C.J., Larsen, and McClure, JJ.
Larsen, J., not participating

(Do Not Publish)